UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                        :        19cv0886 (DLC)
IN RE PROSHARES TRUST II SECURITIES     :
LITIGATION                              :        OPINION AND ORDER
                                        :
-------------------------------------- X

APPEARANCES:

For plaintiffs:
Samuel H. Rudman
David A. Rosenfeld
Erin W. Boardman
Lindsay La Marca
Magdalene Economou
Robbins Geller Rudman & Dowd LLP
58 South Service Rd., Ste. 200
Melville, NY 11747
(631) 367-7100

Steve W. Berman
Karl Barth
Hagens Berman Sobol Shapiro LLP
1301 Second Ave., Ste. 2000
Seattle, WA 98101
(206) 623-7292

Reed R. Kathrein
Lucas E. Gilmore
Hagens Berman Sobol Shapiro LLP
715 Hearst Ave., Ste. 202
Berkeley, CA 94710
(510) 725-3001

For defendants ProShares Trust II, ProShare Capital Management
LLC, Michael L. Sapir, Louis M. Mayberg, Edward J. Karpowicz,
and Todd B. Johnson:
Robert A. Skinner
Amy D. Roy
Jessica M. Bergin
Ropes & Gray LLP
Prudential Tower
800 Boylston St.
Boston, MA 02199
(617) 951-7000

For defendants ABN AMRO Clearing Chicago LLC (f/k/a Fortis
Clearing Americas LLC), Deutsche Bank Securities Inc., Goldman,
Sachs & Co., J.P. Morgan Securities LLC (f/k/a J.P. Morgan
Securities Inc.), Knight Execution & Clearing Services, LLC
(n/k/a Virtu Americas LLC), Merrill Lynch Professional Clearing
Corp., SG Americas Securities, LLC (on behalf of itself and as
successor to Newedge USA, LLC), and Virtu Financial BD LLC:
Adam S. Hakki
Daniel Lewis
Agnès Dunogué
Shearman & Sterling LLP
599 Lexington Ave.
New York, NY 10022
(212) 848-4924

DENISE COTE, District Judge:

SVXY is a derivative financial product that loses value
when stock market volatility rises and gains value when the
market is calm. On February 6, 2018, the New York Stock
Exchange ("NYSE") halted trading for several hours in SVXY.[1]
When trading resumed in the late morning, the SVXY share price
had suffered a sharp drop. This putative class action is
brought on behalf of investors who purchased or otherwise
acquired SVXY shares between May 15, 2017 and February 6, 2018
(the "Class Period").

Plaintiffs principally assert that a May 15, 2017
Registration Statement and related filings for the SVXY Fund
(collectively the "Registration Statement")[2] contained material

---

[1] The full name of SVXY is the ProShares Short VIX Short-Term
Futures ETF.

[2] The May 15, 2017 registration statement was amended on July 11,
2017 and declared effective by the SEC on July 12, 2017. On

omissions.  On September 27, 2019, defendants moved to dismiss plaintiffs' Second Amended Complaint (the "SAC") pursuant to Rule 12(b)(6), Fed. R. Civ. P.  For the reasons that follow, defendants' motion is granted.

## Background

The following facts are taken from the SAC and documents attached to and incorporated in it by reference, including the Registration Statement.  They are taken in the light most favorable to plaintiffs.

ProShares Trust II ("ProShares") is a Delaware statutory trust that manages investment funds with combined assets of $29 billion.  Among the investment funds managed by ProShares are inverse and leveraged exchange-traded funds ("ETFs").  The SAC alleges that ProShares is one of the world's largest managers of these types of ETFs.

### I.  The SVXY Fund

The SAC contains a detailed description of the securities at issue here.  An ETF is a financial product that bundles securities together to offer investors the ability to invest in diversified portfolios.  Unlike a mutual fund, shares of which trade at the fund's net asset value ("NAV"), its total assets

<hr>

July 13, 2017, ProShares filed with the SEC a prospectus on Form 424b3, which incorporated and formed part of the registration statement.  These documents are collectively referred to as the "Registration Statement."

minus its total liabilities, ETF shares trade on stock exchanges throughout the trading day at varying prices. ETFs are usually designed, however, to keep their market price close to their NAV per share.

According to the SAC, most ETFs track an index. Inverse ETFs are designed to deliver the opposite of the performance of the index they track.

This litigation concerns ProShares' inverse ETF called the SVXY Fund (the "Fund"), which ProShares created in 2011. In particular, this litigation concerns SVXY shares that were offered pursuant to the 2017 Registration Statement or that were traded in the period following the filing of the Registration Statement.

As an inverse ETF, the Fund was designed to deliver the opposite performance of the VIX Short-Term Futures Index. The VIX is an index that seeks to measure the expected (i.e. future) volatility of the S&P 500 Index over the next 30 days.[3] Volatility is the range of price change that a security experiences over a given period of time. The VIX is sometimes referred to as the market's "fear gauge" because it measures expected market swings.

---

[3] The S&P 500 Index is Standard & Poor's 500 Index, a stock index based on the 500 largest companies whose shares are listed for trading on the NYSE or the NASDAQ.

The VIX is not tradeable and cannot be invested in directly. Instead, an investor can purchase shares of the VIX Short-Term Futures Index. The VIX Short-Term Futures Index is comprised of VIX futures contracts. A futures contract is an agreement to buy or sell a predetermined amount of a commodity -- here, volatility itself -- at a specific price on a specific date in the future. The VIX Short-Term Futures Index essentially represents the market's expectation as to how the VIX will perform over the next 30 days.

During the Class Period, the Fund's declared "investment objective" was to achieve results that corresponded to the inverse (-1x) of the daily performance of the VIX Short-Term Futures Index. For example, if the VIX Short-Term Futures Index decreased by 5% on a given day due to low market volatility, the Fund's investment objective was to increase by 5% that same day. Purchasing SVXY shares allowed investors to hedge investment risk and diversify investment portfolios.

During the Class Period, substantially all of the Fund's assets were invested in VIX futures contracts. Each day, defendant ProShare Capital Management LLC (the "Sponsor"), bought and sold VIX futures contracts to fulfill the Fund's investment objective of replicating the inverse value of the VIX Short-Term Futures Index. When the VIX Short-Term Futures Index increased in value during the trading day, the Fund's value --

as measured by its NAV -- was designed to decrease.  This decrease in NAV was accomplished by purchasing VIX futures contracts (i.e. increasing its liabilities).  When the VIX Short-Term Futures Index decreased in value during the trading day, the Fund would sell futures contracts in order to increase its NAV (i.e. reducing its liabilities).

The SAC alleges that this "rebalancing" occurred each day between 4:00 p.m., the time the stock market closes, and 4:15 p.m., the time the VIX futures market closes.  This was the same time period in which other volatility-related ETFs rebalanced their portfolios through the purchase and sale of futures contracts.  Because the Fund's investment objective was simply to achieve the inverse value of the VIX Short-Term Future Index -- not to achieve the greatest return for investors -- the purchase and sale of VIX futures contracts would occur each day, regardless of the price of the futures contracts.  The Fund was thus price insensitive.

The markets experienced a period of historic low volatility in 2017.  As a result, the VIX Short-Term Futures Index dropped to historic lows throughout 2017 and investments in volatility-related ETFs increased.  By May 31, 2017, aggregate gross capital subscriptions in the Fund had increased to $7.9 billion.

As investment poured into inverse-volatility ETFs, the quantity of VIX futures contracts necessary to rebalance each

ETF's portfolio grew, too.  According to the SAC, however, the growth in demand for VIX futures contracts that was fueled by the volatility-related ETFs' daily rebalancing needs outpaced the growth in the supply of VIX futures contracts, eventually creating a "liquidity gap."

On February 5, 2018, the S&P 500 Index fell approximately 4% amid concerns about rising bond yields and higher inflation. At 4:00 p.m., the close of markets, the VIX Short-Term Futures Index had risen 33% from the prior day's close.  The SVXY share price fell roughly 32%, from the prior day's close of $105.60 per share to $71.82 per share at 4:00 p.m. on February 5. According to the SAC, the Fund was then rebalanced so that its NAV reflected the 32% decline in the SVXY share price.  To rebalance, the Fund purchased hundreds of millions of dollars of VIX futures contracts before 4:15 p.m., the close of the market for VIX futures contracts.  During this brief time period, between 4:00 and 4:15 p.m., other volatility-related ETFs also purchased and sold VIX futures contracts in order to rebalance their portfolios.  The outsized demand for and limited supply of VIX futures contracts led to a liquidity gap that caused massive investor losses.

The Fund's NAV was not published at 4:15 p.m. on February 5, and was still not published at 4:00 a.m. on February 6, when pre-market trading began.  This led the NYSE to halt trading in

SVXY shares.  When trading resumed at 11:35 a.m. on February 6, the opening SVXY share price was $11.11, a precipitous drop from the $71.82 trading price at 4:00 p.m. the previous day.

On February 27, 2018, ProShares announced that the investment objective for the Fund would change.  Its new investment objective would be to seek results that correspond to one-half the inverse (-0.5x) of the VIX Short-Term Futures Index for a single day.

## II.   The Registration Statement

On May 15, 2017, ProShares filed its Registration Statement on Form S-3, which was amended on July 11, 2017 and declared effective by the SEC on July 12, 2017.  On July 13, 2017, ProShares filed with the SEC a prospectus on Form 424b3, which incorporated and formed part of the Registration Statement. These documents are collectively referred to as the Registration Statement.[4]

The Registration Statement discloses that the SVXY Fund was a "geared fund."  The "Sponsor [sought] to cause the NAV of the Fund to track the daily performance of the [VIX Short-Term Futures] Index in accordance with [the] Fund's investment objective, even during periods in which the [VIX Short-Term Futures] Index is flat or moving in a manner which causes the

_____

[4] Pursuant to the Registration Statement, ProShares registered $1,684,262,640 SVXY common units of beneficial interest.

value of the Fund to decline."  The Registration Statement

explains that the Fund "seeks results . . . that correspond to

the inverse (-1) of the performance of the [VIX Short-Term

Futures] Index for a single day," and that a "'single day' is

measured from the time [the] Fund calculates its [NAV] to the

time of the Fund's next NAV calculation."

        To achieve that investment objective, as the Registration

Statement repeatedly explains, the Fund purchases and sells VIX

futures contracts.  The Registration Statement declares that,

the Fund "invests substantially all of its assets in [VIX]

Futures Contracts."  The Fund "seek[s] to achieve [its] . . .

investment objective[] through the appropriate amount of

exposure to the VIX futures contracts included in the [VIX

Short-Term Futures] Index."  The Registration Statement states,

the Fund "intends to meet its investment objective by taking

long or short positions in VIX futures contracts."

        The Registration Statement also makes clear that the Fund's

investment objective was pursued "daily."  It announces that the

"Fund seeks results . . . that correspond to the inverse (-1x)

of the performance of the [VIX Short-Term Futures] Index for a

single day."  It states that the Fund was "intended to be used

only for short-term investment horizons."  It cautions investors

to "actively manage and monitor their investments, as frequently

as daily."  It warns, "As with all investments, an investor in

[the Fund] could potentially lose the full principal value of his/her investment, even over periods as short as one day."

While explaining that the Fund's investment objective was pursued daily, the Registration Statement also provides investors with a table approximating the highest and lowest annualized returns over one year.  The table shows highest annualized returns estimated at 150% and lowest annualized returns at -61.7%.  A warning under the table states

> [T]he foregoing table[] [is] intended to isolate the effect of index volatility and index performance on the return of leveraged and inverse funds.  The [Fund's] actual returns may be significantly greater or less than the returns shown above as a result of any of the factors discussed above or under the below risk factor describing correlation risks.

The Registration Statement further explains that the purchase and sale of VIX futures contracts happens daily and that market developments between 4:00 and 4:15 p.m. could have heightened effects on the price differential between the Fund's market price and its NAV.  It states,

> The impact of the [VIX Short-Term Futures] Index's movements during the day will affect whether the [] Fund's portfolio needs to be rebalanced.  For example, if the Index has risen on a given day, net assets of [the] Fund should fall.  As a result, inverse exposure will need to be decreased.  Conversely, if the Index has fallen on a given day, net assets of the [] Fund should rise.  As a result, inverse exposure will need to be increased.

The Registration Statement explains that "the Shares of the []
Fund trade on the [NYSE Arca[5]] from 9:30 a.m. to 4:00 p.m.," but
that "[t]he NAV for each Share of [the] Fund . . . will be
calculated at 4:15 p.m."  It cautions, "Consequently, during the
time when the [NYSE Arca] is closed but before the determination
of NAV, there could be market developments or other events that
cause or exacerbate the difference between the price of the
Shares of [the] Fund and the NAV of such Shares."

The Registration Statement also cautions about the risks of
market illiquidity.  It explains that "[f]actors that may affect
[the] Fund's ability to meet its investment objective include .
. . the Sponsor's ability to purchase and sell Financial
Instruments in a manner that correlates to [the] Fund's
objective" and "holding Financial Instruments traded in a market
that has become illiquid or disrupted."  It warns,

> Financial Instruments cannot always be liquidated at
> the desired price.  It is difficult to execute a trade
> at a specific price when there is a relatively small
> volume of buy and sell orders in a market.  A market
> disruption can also make it difficult to liquidate a
> position or find a swap counterparty at a reasonable
> cost.

> Market illiquidity may cause losses for the Fund[].
> The large size of the positions which the Fund[] may
> acquire increases the risk of illiquidity by both
> making [its] positions more difficult to liquidate and
> increasing the losses incurred while trying to do so.
> Any type of disruption or illiquidity will potentially

---

[5] The NYSE Arca is an electronic securities exchange on which
ETFs and equities trade.

be exacerbated due to the fact that the Fund[] will typically invest in Financial Instruments related to one benchmark, which in many cases is highly concentrated.

The Registration Statement also warns about the severity of potential losses and explains that these losses may not be linked exclusively to performance-based losses of the underlying indexes.  It states that "[t]he assets that the Fund[] invest[s] in can be highly volatile and the Fund[] may experience large losses when buying, selling or holding such instruments."  It further explains that "[i]nvestments linked to equity market volatility, including VIX futures contracts, can be highly volatile and may experience large losses.  High volatility may have an adverse impact on the Fund[] beyond the impact of any performance-based losses of the underlying indexes."  The Registration Statement also states

> Inverse positions can also result in the total loss of an investor's investment.  For the [] Fund, a single-day or intraday increase in the level of the Fund's benchmark approaching 100% could result in the total loss or almost total loss of an investor's investment, even if [the] Fund's benchmark subsequently moves lower.

The Registration Statement additionally cautions, "As with all investments, an investor in [the Fund] could potentially lose the full principal value of his/her investment, even over periods as short as one day."

### III.  Procedural History

This action was brought on January 29, 2019.[6]  On April 29, 2019, a scheduling order was issued choosing lead plaintiffs and directing them to file any amended complaint by June 21. Plaintiffs were advised that, should defendants move to dismiss their amended complaint, they would have an opportunity to amend their complaint in response to the motion to dismiss. Plaintiffs were further advised that it was unlikely that they would be granted any further opportunities to amend.  On June 21, plaintiffs filed an amended complaint, which defendants moved to dismiss on August 2.  In response to the motion to dismiss, on September 6, plaintiffs filed the SAC.

The SAC asserts five causes of action: (1) that all defendants are liable under Section 11 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77k, for distributing a materially misleading registration statement; (2) that the

---

[6] This action is brought against ProShares, the registrant and issuer of SVXY shares; ProShare Capital Management LLC, the Sponsor of the SVXY Fund; and individuals who are Principals of the Sponsor and signatories of the Registration Statement. Collectively, these defendants are referred to as the ProShares Defendants.  This action is also brought against the underwriters for the offer and sale of SVXY shares during the Class Period, including ABN AMRO Clearing Chicago LLC, Deutsche Bank Securities Inc., Goldman, Sachs & Co., J.P. Morgan Securities LLC, Knight Execution and Clearing Services, LLC, Merrill Lynch Professional Clearing Corp., Newedge USA LLC, SG Americas Securities, LLC, and Virtu Financial BD LLC.

ProShares Defendants are liable as control persons under Section 15 of the Securities Act, 15 U.S.C. § 77o, in connection with the Section 11 violations; (3) that the ProShares Defendants committed fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; (4) that the ProShares Defendants are liable as control persons under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), in connection with the Section 10(b) violations; and (5) that the ProShares Defendants violated Items 303 and 105 of Regulation S-K, 17 C.F.R. §§ 229.303(a)(3)(ii), 229.105.

On September 27, 2019, defendants moved to dismiss the SAC. This motion became fully submitted on November 1.

### Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Geffner v. Coca-Cola Co., 928 F.3d 198, 199 (2d Cir. 2019) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Charles v. Orange County, 925 F.3d 73, 81 (2d Cir. 2019) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." Empire Merchants, LLC v. Reliable Churchill LLP, 902
F.3d 132, 139 (2d Cir. 2018) (citation omitted). The plaintiff
must plead enough facts to "nudge[] [his] claims across the line
from conceivable to plausible . . . ." Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 570 (2007).

When a party moves to dismiss for failure to state a claim
upon which relief can be granted under Rule 12(b)(6), Fed. R.
Civ. P., a court must "constru[e] the complaint liberally,
accept[] all factual allegations as true, and draw[] all
reasonable inferences in the plaintiff's favor." Coalition for
Competitive Electricity, Dynergy Inc. v. Zibelman, 906 F.3d 41,
48-49 (2d Cir. 2018) (citation omitted). "A complaint is . . .
deemed to include any written instrument attached to it as an
exhibit, materials incorporated in it by reference, and
documents that, although not incorporated by reference, are
'integral' to the complaint." Sierra Club v. Con-Strux, LLC,
911 F.3d 85, 88 (2d Cir. 2018) (citation omitted).

Claims brought under Section 10(b) of the Exchange Act are
subject to the heightened pleading requirements of Rule 9(b),
Fed. R. Civ. P., and the Private Securities Litigation Reform
Act of 1995 ("PSLRA"). City of Pontiac Policemen's and
Firemen's Retirement System v. UBS AG, 752 F.3d 173, 184 (2d
Cir. 2014). "These well-known standards require, in relevant
part, that securities fraud complaints specify each misleading

statement . . . and state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  Id.  (citation omitted).

Defendants argue that the heightened pleading requirements applicable to plaintiffs' Section 10(b) claim also should apply to their Section 11 claim, because it is "grounded in fraud." See Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004).  It is not necessary to determine which standard should be used to review plaintiffs' Section 11 claim.  The Section 11 claim fails regardless of which standard applies.

## I.  Sections 11 and 15 of the Securities Act

Plaintiffs allege that the defendants are liable under Section 11 of the Securities Act for making material misstatements and omissions in the Registration Statement.  They also seek to hold the ProShares Defendants liable under Section 15 of the Securities Act as control persons.

Section 11 of the Securities Act of 1933 imposes liability on an issuer of a registration statement in three circumstances:

> if (1) the statement "contained an untrue statement of
> a material fact," (2) the statement "omitted to state
> a material fact required to be stated therein," or (3)
> the omitted information was "necessary to make the
> statements therein not misleading."

Stadnick v Vivint Solar, Inc., 861 F.3d 31, 36 (2d Cir. 2017) (quoting 15 U.S.C. § 77(k)).  Unlike securities fraud claims brought pursuant to Section 10(b) of the Exchange Act,

plaintiffs bringing Section 11 claims "need not allege scienter, reliance, or loss causation." In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 359 (2d Cir. 2010). Claims brought under Section 15 of the Securities Act "rel[y], in part, on a plaintiff's ability to demonstrate primarily liability" under Section 11. Id. at 358.

"Whether a statement or omission is material is an objective, totality-of-the circumstances inquiry." Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc., 873 F.3d 85, 146 (2d Cir. 2017). "A material fact is one that assumes actual significance for a reasonable investor deciding whether to purchase the security at issue, but it need not be outcome-determinative." Id. (citation omitted). A statement or omission is "material" if a "reasonable investor would view it as significantly altering the total mix of information made available." Id. (citation omitted).

In considering whether a statement or omission is materially misleading, courts read registration statements "cover-to-cover," and disclosures and representations must be "taken together and in context." In re ProShares Trust Sec. Litig., 728 F.3d 96, 103 (2d Cir. 2013) (citation omitted). "[T]he context," includes "all facts related to the statement or omission, its surrounding text, the offering documents, the securities, the structure of the transaction, and the market in

which the transaction occurs." Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n, 873 F.3d at 151. "[W]hen a registration statement warns of the exact risk that later materialized, a [S]ection 11 claim will not lie as a matter of law." In re ProShares, 728 F.3d at 102 (citation omitted).

The gravamen of the SAC is that the Registration Statement was misleading because it failed to disclose that the Fund's "own conduct of rebalancing in an overly crowded VIX futures market could itself drive up the price of VIX futures contracts, the level of market volatility, and the level of the [VIX Short-Term Futures] Index -- thereby driving down the value of SVXY shares." Most of the other alleged material omissions are restatements of this argument. In full, the SAC alleges that the Registration Statement was misleading because it failed to disclose that: (1) the Fund and other volatility-related ETFs re-balanced their portfolios between 4:00 p.m. and 4:15 p.m. and that market developments in this time period could result in "catastrophic losses"; (2) SVXY shares could experience dramatic losses in "several minutes" as opposed to "one day"; and (3) investors in the Fund who correctly predicted the future direction and volatility of the markets could nonetheless experience losses due to the demand for VIX futures contracts and illiquidity in that market. In addition to these alleged omissions, the SAC alleges that a table in the Registration

Statement estimating that annualized returns would not fall below -61.7% misrepresented the risk associated with the Fund.

Reading the Registration Statement "cover-to-cover," the disclosures and representations "taken together and in context" could not have misled a reasonable investor about the nature of the SVXY Fund and the risks associated with this complex financial product. In re ProShares, 728 F.3d at 103 (citation omitted). The Registration Statement adequately warns investors of the risks alleged in the SAC.

The Registration Statement discloses the primary omission alleged by plaintiffs -- that the late-afternoon rebalancing of the Fund's portfolio could cause illiquidity in the VIX futures contract market. The Registration Statement makes clear that "substantially all" of the Fund's assets were invested in VIX futures contracts. It explains that these assets can be "highly volatile" and that the Fund could "experience large losses when buying, selling, or holding such instruments." It further warns that this volatility could result in an "adverse impact" beyond the impact of "any performance-based losses of the underlying indexes." Significantly, the Registration Statement states that "[t]he large size of the positions which the [Fund] may acquire increases the risk of illiquidity by both making their positions more difficult to liquidate and increasing the losses incurred while trying to do so." These disclosures would lead a

reasonable investor to know that the Fund's own conduct in purchasing and selling VIX futures contracts could affect market liquidity and drive down the value of SVXY shares.

The SAC's allegations of other deficiencies also fail. Plaintiffs argue that the Registration Statement did not disclose that market developments and volatility-related ETF rebalancing between 4:00 and 4:15 p.m. could lead to catastrophic losses. The Registration Statement explains, however, that potential losses could result from rebalancing occurring between 4:00 and 4:15 p.m. It notes that the NYSE Arca closes at 4:00 p.m. and that the "NAV for each share of the [Fund] . . . will be calculated at 4:15 p.m." "Consequently," the Registration Statement explains, "during the time when the [NYSE Arca] is closed" -- 4:00 p.m. -- "but before the determination of NAV" -- 4:15 p.m. --- "there could be market developments or other events that cause or exacerbate the difference between the price of" SVXY shares and the NAV of such shares. A reasonable investor would understand from this statement that market developments and portfolio rebalancing from 4:00 to 4:15 p.m. could result in large losses.

Second, plaintiffs' argument that the Registration Statement is misleading for not disclosing that losses could occur in a matter of "minutes" fails on account of the above-described disclosures. Besides explaining that the fifteen-

minute period between 4:00 and 4:15 p.m. was a period in which significant losses could result, it also states that an investor could lose "the full principal value of his/her investment in a period as short as one day."  From these disclosures, a reasonable investor would understand the potential for massive losses within minutes.  As explained recently by the Court of Appeals, "it is implausible that substituting" the phrase 'in a period as short as several minutes' with 'in a period as short as one day' "is a change substantially likely to be viewed by a reasonable investor as having significantly altered the import of the total mix of information ProShares made available."  In re ProShares, 728 F.3d at 104.

Third, plaintiffs' argument that the Registration Statement failed to adequately warn investors that losses would not necessarily correspond to the inverse of the VIX Short-Term Futures Index is unpersuasive.  The Registration Statement explains that "[h]igh volatility may have an adverse impact on the Fund[] beyond the impact of any performance-based losses of the underlying [VIX Short-Term Futures Index]."  It further explains that "[m]arket illiquidity may cause losses for the Fund[] and cautions that "[t]he large size of the positions which the Fund[] may acquire increases the risk of illiquidity" which "will potentially be exacerbated due to the fact that the Fund[] will typically invest in Financial Instruments related to

one benchmark, which in many cases is highly concentrated."  A

reasonable investor would understand from these disclosures that

the Fund's own need to rebalance its portfolio could effect

outsized losses to the Fund.  After all, "disclosure is not a

rite of confession or exercise in common law pleading."  In re

ProShares, 728 F.3d at 103 (citation omitted).

Finally, plaintiffs' argument regarding the table

estimating losses over one year fails, too.  Plaintiffs argue

that this table was misleading because it led investors to

believe that the "worst-case scenario . . . was a loss of 61.7%

of SVXY's value over the course of a one-year period."  But, a

warning that accompanied the table makes clear that the table's

purpose was to "isolate the effect of index volatility and index

performance."  The warning cautions that "actual returns may be

significantly greater or less than the returns shown above as a

result of any of the factors discussed [in the Registration

Statement] describing correlation risks."  The warning suffices

to alert investors that market illiquidity could cause

"significantly" worse returns than what is shown in the table.

No reasonable investor reading the Registration Statement would

understand otherwise.

## II.   Section 10(b) of the Exchange Act

Plaintiffs also argue that the ProShares Defendants are

liable under Section 10(b), Rule 10b-5, and Section 20(a) of the

Exchange Act, for making fraudulent statements in the Registration Statement, as well as in periodic reports and in an additional registration statement that was filed with the SEC during the Class Period, but never made effective.  To succeed on a claim under Section 10(b) of the Exchange Act and Rule 10b-5, "a plaintiff must allege that each defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of the injury." Ind. Pub. Ret. Sys. v. SAIC, Inc., 818 F.3d 85, 92 (2d Cir. 2016) (citation omitted).  "Section 20(a) of the Exchange Act imposes derivative liability on parties controlling persons who commit Exchange Act violations."  In re Vivendi, S.A. Sec. Litig., 838 F.3d 223, 238 n.6 (2d Cir. 2016) (citation omitted).

Materiality under Section 10(b) of the Exchange Act is measured by the same standard as Section 11.  Meyer v. Jinkosolar Holdings Co., Ltd., 761 F.3d 245, 250 (2d Cir. 2014).  "The central inquiry in determining whether a prospectus is materially misleading under both Section 10(b) and Section 11 is . . . whether defendants' representations, taken together and in context, would have misled a reasonable investor about the nature of the investment."  I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., 936 F.2d 759, 761 (2d Cir. 1991) (citation

omitted).  Because plaintiffs have failed to plausibly allege
that the Registration Statement was materially misleading under
Section 11, their claims under Section 10(b) concerning the
Registration Statement necessarily fail.

Plaintiffs also allege, however, that ProShares' public
filings made after July 13, 2017, the date the Registration
Statement became effective, and before February 6, the end of
the Class Period, give rise to Section 10(b) liability.  That is
because, according to plaintiffs, these filings reiterate
"verbatim" the same "risk warnings and other statements"
contained in the Registration Statement even though those risks
had grown during the Class Period.  Although "[a] duty to update
may exist when a statement, reasonable at the time it is made,
becomes misleading because of a subsequent event," In re Int'l
Bus. Machines Corp. Sec. Litig., 163 F.3d 102, 110 (2d Cir.
1998), the SAC does not plausibly allege that the statements in
the Registration Statement became misleading on or before
February 6.  The Registration Statement warns that a "market
disruption" could make it "difficult to liquidate a position or
find a swap or forward contract counterparty."  The Registration
Statement also cautions that the Fund "may acquire" large
positions that would "increase[] the risk of illiquidity."  The
Registration Statement thus adequately warns that the degree of
risk could change over time depending on liquidity in the VIX

futures contracts.  The SAC does not adequately plead that there was a duty to update the Registration Statement, as it already disclosed precisely what plaintiffs allege was omitted -- that the degree of risk could increase over time.

**III.  Items 303 and 105 of Regulation S-K**

Plaintiffs also allege that the ProShares Defendants violated Items 303 and 105 of Regulation S-K, 17 C.F.R. §§ 229.303(a)(3)(ii)), 229.105.  "In relevant part, Item 303 of Regulation S-K requires the disclosure of 'any known trends . . . the registrant reasonably expects will have a material . . . impact on net sales or revenues or income.'"  Stadnick, 861 F.3d at 39 (quoting 17 C.F.R. § 229.303(a)(3)(ii)).  "Disclosure is required where the trend is both (1) known to management and (2) reasonably likely to have material effects on the registrant's financial condition or results of operations."  Id. (citation omitted).  Similarly, Item 105 creates a duty to disclose "the most significant factors that make an investment in the registrant or offering speculative or risky."  17 C.F.R. § 229.105.  Events that are not "reasonably likely to be material under Item 303" are not among the "most significant factors" rendering an offering speculative or risky under Item 105.

<u>Hutchison v. Deutsche Bank Sec. Inc.</u>, 647 F.3d 479, 484 n.4 (2d Cir. 2011) (citation omitted).[7]

Plaintiffs allege that the ProShares Defendants violated Items 303 and 105 by failing to disclose that, by the start of the Class Period, the Fund and other volatility-related ETFs needed to trade more VIX futures contracts in order to meet their rebalancing requirements, causing the price of VIX futures contracts to increase, along with market illiquidity. As discussed, the Registration Statement included "ample warning" of these risks. <u>Stadnick</u>, 861 F.3d at 39. This argument fails, too.

### Conclusion

Defendants' September 27, 2019 motion to dismiss is granted. The Clerk of Court shall close the case.

Dated:    New York, New York
          January 3, 2020

_____
DENISE COTE
United States District Judge

---

[7] On March 20, 2019, the SEC adopted amendments to certain disclosure requirements in Regulation S-K, moving what was previously Item 503 to Item 105. <u>FAST Act Modernization and Simplification of Regulation S-K</u>, 2019 WL 1437180, at *1 (12688-89) (Apr. 2, 2019).